# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREGORY A. MARTIN, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. CIV-12-690-M |
| CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration[1], | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is hereby substituted for Commissioner Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

Plaintiff's applications for DIB and SSI, alleging a disability beginning April 2, 2009[2] (TR. 13), were denied on initial consideration and on reconsideration at the administrative level (TR. 13). Pursuant to the Plaintiff's request, an administrative law judge (ALJ) held a hearing *de novo* on May 5, 2011 (TR. 403-442). Plaintiff appeared with counsel and testified in support of the applications. A vocational expert also testified. The ALJ issued her decision on May 27, 2011, finding that Plaintiff was not disabled (TR. 13-21). The Appeals Council denied Plaintiff's request for review on April 20, 2012, and the decision of the ALJ became the final decision of the Commissioner (TR. 5-8).

**STANDARD OF REVIEW**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on

---

[2] There was much confusion at the administrative hearing as to whether Plaintiff was alleging an onset date of April 2008 or April 2009 (TR. 416, 429, 430). As Plaintiff applied for DIB and SSI in March 2009, it appears that April 2008 makes more sense. But at the hearing, the ALJ announced that Plaintiff's onset date could not be the "day he got out of prison" (TR. 438). Ultimately, the Plaintiff's attorney agreed to amend the onset date to April 2, 2009 (TR. 440).

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**THE ADMINISTRATIVE DECISION**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§404.1520; 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the alleged onset date (TR. 15). At step two, the ALJ concluded that Plaintiff has the following severe impairments: lumbar neural foraminal stenosis and depression (TR. 15). At step three, the ALJ determined that none of Plaintiff's impairments or combination of impairments meets or equals the limiting characteristics of any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 15-16). At step four, the ALJ first formulated Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual

> functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour day with normal breaks and sit 6 hours in an 8-hour day. He can occasionally stoop and has no manipulation limitations. He can perform simple tasks with routine supervision and has sufficient skills to interact with co-workers and supervisors but not the general public. He can adapt to work situations. He is markedly limited in his ability to understand, remember and carry out detailed instructions and in his ability to interact with the general public.

(TR. 16). The ALJ then determined that Plaintiff was unable to perform any of his past relevant work as railroad plumber, building repairman, pool service worker or tree trimmer (TR. 19).

At step five, the ALJ determined that Plaintiff had acquired unidentified skills from his past relevant work that would transfer to light jobs existing in significant numbers in the national economy including construction laborer, repair worker and "electrical assembly" [sic] (TR. 20). In the alternative, the ALJ determined that Plaintiff can perform sedentary unskilled jobs such as produce worker and inspector (TR. 20). Thus, at step five of the sequential evaluation process the ALJ determined that Plaintiff was not disabled.

## ISSUES PRESENTED

Plaintiff contends that the ALJ erred in failing to perform a proper vocational analysis. He contends that the ALJ failed to identify the transferable skills that allegedly would have enabled Plaintiff to perform the light, semi-skilled jobs identified at step five. Plaintiff further contends that the ALJ erred in failing to analyze whether the two sedentary, unskilled jobs identified by the VE exist in significant numbers. Plaintiff also

challenges the ALJ's evaluation of the medical evidence. Finally, Plaintiff states that the ALJ erred in his credibility analysis.

## ANALYSIS

### I. The ALJ's Vocational Analysis

At step five of the sequential evaluation process, the ALJ determined that Plaintiff had acquired skills from his past relevant work as plumber, building repairman, pool service worker, and tree trimmer (TR. 19). Although the ALJ found that skills acquired from Plaintiff's past relevant work would be transferrable to "other occupations with jobs existing in significant numbers in the national economy" she failed to identify the acquired skills and failed to explain how those skills would transfer to the semi-skilled jobs that required the ability to do light work (TR. 20). The ALJ also failed to question the VE concerning the types of skills Plaintiff might have acquired or which of those skills would transfer to the light semi-skilled jobs identified by the VE.

When an ALJ makes a finding that a claimant has transferable skills, she must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable. *Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 2001). Moreover, the ALJ's "[f]indings should be supported by appropriate documentation." SSR 82–41, 1982 WL 31389, at *7. Relying on a job description or on a job title alone is not sufficient to document the claimant's acquired skills. *Id.* at *4. The Commissioner defines a skill as:

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of

> simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery.

*Id.* at *2.

In this case, the ALJ did not ask the VE to identify skills from Plaintiff's past relevant work that were transferable to the light semi-skilled jobs identified by the VE. The mere statement that transferable skills exist is not sufficient to allow this Court to meaningfully review the ALJ's decision or determine whether this part of the step five decision is supported by substantial evidence.

Once the semi-skilled, light jobs identified by the VE are eliminated from consideration, the next question the Court would normally consider would be whether the remaining two unskilled sedentary jobs exist in significant numbers. Because this case should be remanded on other grounds, the Court need not decide this issue.

## II. The ALJ's Evaluation of the Treating Physician's Opinion

Plaintiff next contends that the ALJ erred in her consideration of the medical evidence of his mental impairments. He contends that the ALJ erred by giving the evidence from his treating source, Dr. Fatima P. Haque, little weight. According to Plaintiff, the ALJ further erred by giving more weight to the opinions of an examining

psychologist, Dr. Raymond M. Fuchs, and a non-examining psychologist, Dr. Joan Holloway.

The Tenth Circuit Court of Appeals has long recognized the proper analysis and legal standards for determining the weight to be given to the opinions of treating sources. When considering the opinion of an "acceptable medical source" such as the Plaintiff's treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The opinion of a treating physician must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the opinion is deficient in either of these respects, it should not be given controlling weight.

Even if the opinion of a treating physician is not entitled to controlling weight, however, it is still entitled to deference. The ALJ must clearly state the weight the opinion is being given, even if it is being rejected. The ALJ must specify the reasons for the weight afforded the opinion, and his reasons must be closely tied to the factors specified in the regulations. *See Watkins*, 350 F.3d at 1300–01. Remand is required if the ALJ does not adequately support the weight he assigned to the opinion of an acceptable medical source. As the relevant ruling explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically

> acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct inquiry. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this basis"). This second inquiry is governed by its own set of factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Id.* at 1119 (quotation omitted). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight she gave to the treating source's medical opinion and the reason for that weight." *Id.* (quotation omitted).

Plaintiff challenges the weight the ALJ assigned to the initial assessment of Plaintiff's mental impairments by Dr. Haque who evaluated Plaintiff's mental status on January 1, 2011, when Plaintiff first sought care from North Rock Medication Clinic. (TR. 314-315) Dr. Haque diagnosed Plaintiff with major depressive disorder, anxiety disorder, and alcohol dependence, in remission (TR. 315). She assessed his Global Assessment of Functioning at 38.[3]

---

[3] The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000). GAF scores are situated along the following "hypothetical continuum of mental health [and] illness":
• 91–100: "Superior functioning in a wide range of activities, life's problems never seem to get out of hand, is sought out by others because of his or her many positive qualities. No symptoms."
• 81–90: "Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members)."
• 71–80: "If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)."
• 61–70: "Some mild symptoms (e.g., depressed mood and mild insomnia), OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."
• 51–60: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."
• 41–50: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."
• 31–40: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child beats up younger children, is defiant at home, and is failing at school)."
• 21–30: "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."
• 11–20: "Some danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute)."
• 1–10: "Persistent danger of severely hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death."

Previously, on February 8, 2010, Plaintiff had been examined and tested by Dr. Fuchs who completed a Psychological Report for Social Security Disability Determination (TR. 192-194). Dr. Fuchs' detailed report portrays a man with significant mental impairments. Although he assessed Plaintiff with a considerably higher GAF of 65, with an estimated high of 75 for the last year and a low of 55, Dr. Fuchs' report was otherwise consistent with the opinion of Dr. Haque and other evidence in the record. Moreover, GAF scores in the range of 61-70 still indicate difficulty in social, occupational or school functioning.

Dr. Holloway reviewed the medical records, and on February 25, 2010, she completed a Psychiatric Review Technique form (TR. 200-213). Dr. Holloway concluded that Plaintiff "can do simple tasks in a work setting" (TR. 214). As Plaintiff notes, Dr. Holloway completed the PRT form before Plaintiff was examined by Dr. Haque. Therefore, her opinions were not based on the entire record.

The ALJ gave "significant weight" to the opinions of Dr. Fuchs and Dr. Holloway, both state agency psychologists, and "less weight" to the diagnosis of Dr. Haque (TR. 19). Plaintiff challenges the ALJ's consideration of the medical evidence regarding his mental health on the basis that Dr. Haque is a specialist in the field of mental health -- a psychiatrist -- unlike Dr. Fuchs and Dr. Holloway. Plaintiff also challenges the ALJ's statement that Plaintiff's lower GAF score assigned by Dr. Haque might be attributable

---

- 0: "Inadequate information."

Id. at 34 (emphasis omitted).

to abuse of alcohol in which Plaintiff might have been engaged. This statement is, as Plaintiff notes, sheer speculation, as Dr. Haque stated that Plaintiff's alcohol abuse was in remission. Both of these points are valid.

> In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.

*McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation and emphasis omitted). In this case the ALJ's failure to apply the proper legal analysis in determining the weight to be given to Dr. Haque's treating source opinion requires reversal and remand of the Commissioner's final decision. On remand, the Commissioner may, if necessary, further develop the record regarding Plaintiff's mental impairments.

### III. The ALJ's Credibility Analysis

Plaintiff's final assignment of error is based on the ALJ's credibility analysis. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). In *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the Tenth Circuit set forth the framework for the proper analysis of a claimant's pain. First, the objective medical evidence must demonstrate a pain-producing impairment. Second, a "loose nexus" must exist between the proven impairment and the claimant's subjective allegations of pain. If these two conditions are satisfied, the ALJ must then determine whether, considering all the

evidence both objective and subjective, the claimant's pain is in fact disabling. *Id.*, 834 F.2d at 163-164. "Objective evidence" is any evidence that can be discovered and substantiated by external testing. *Id.* at 162. "Subjective evidence" consists of statements of the claimant that can be evaluated only on the basis of credibility. *Id.* at 162, n. 2. To determine the credibility of pain testimony, the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-1274 (10th Cir. 2004) (*quoting Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted)).

A court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quotation omitted).

It is undisputed that Plaintiff has a severe, pain producing impairment diagnosed by objective medical testing. An MRI performed on April 2, 2009, revealed severe left L4-L5 neuroforaminal stenosis (TR. 267-268). The record indicates that Plaintiff's pain is reduced by steroid injections, but, as Plaintiff testified, he can only get such injections three times per year (TR. 412).

The ALJ based her credibility findings largely on the timing of Plaintiff's application for DIB and SSI. Ignoring the amended onset date upon which she, herself, insisted, the ALJ stated that, for purposes of evaluating his credibility, Plaintiff's onset date was April 15, 2008, approximately the same day he was released from prison (TR. 17). The ALJ also stated that Plaintiff's credibility was undermined by his having looked for work after he was released from prison (TR. 17). The ALJ did not, however, adequately explain which portions of Plaintiff's testimony she did not believe or why, nor did she analyze Plaintiff's credibility by considering the factors set forth in *Branum*. On remand, the ALJ will have the opportunity to reconsider Plaintiff's credibility using the appropriate framework set forth in *Luna.*

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is not supported by substantial evidence and should be **REVERSED AND REMANDED** for further proceedings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **September 3, 2013**. The parties are further advised that failure to make timely objection to this Report and

13

Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on August 19, 2013.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE